**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
E-mail: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PARADISE MORGAN,

Plaintiff, Case No. 26-cv-9236

- against -

GROOVY COFFEE, LLC,

Defendant.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Paradise Morgan ("Plaintiff" or "Morgan"), brings this action on behalf of herself against Groovy Coffee, LLC (hereinafter "Groovy Coffee" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Groovy Coffee for its failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Groovy Coffee provides to their non-disabled customers through www.groovycoffee.com (hereinafter "groovycoffee.com" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Groovycoffee.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs. Yet, groovycoffee.com contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Groovy Coffee excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website

means that blind people are excluded from experiencing transacting with Defendant's website and from purchasing goods or services from Defendant's website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on groovycoffee.com.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the 'Tumbler' and the 'Ground Original Roast' on groovycoffee.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on groovycoffee.com.

11. Because Defendant's website, groovycoffee.com, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Groovy Coffee's policies, practices, and procedures so that Defendant's

website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continue to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its website. Because of this targeting, it is not unusual for Defendant to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and have been and are causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's

claims have occurred in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the Defendants "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

## PARTIES

16. Plaintiff, is and has been at all relevant times a resident of New York County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, Paradise Morgan, cannot use a computer without the assistance of screen reader software. Plaintiff, Paradise Morgan, has been denied the full enjoyment of the facilities, goods and services of groovycoffee.com, as a result of accessibility barriers on groovycoffee.com.

18. Defendant, Groovy Coffee, LLC, is a Delaware foreign limited liability company doing business in New York State with a principal place of business located in New York, NY.

19. Groovy Coffee provides to the public a website known as GroovyCoffee.com, which provides consumers with access to an array of goods and services, including, the ability to view the wide range of Colombian whole and ground coffee beans and related products which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use Defendant's website to find and purchase Defendant's products. Defendant's products are sold at many retailers throughout the country including retailers in this district. Defendant maintains dominion and control over how its products are sold at its partner retailers. Defendant's website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017) and *Romero v. 88 Acres Foods, Inc*., 20-cv-9215 (KMW), 2022 U.S. Dist. LEXIS 9040, at *7 (S.D.N.Y. Jan. 18, 2022).

## NATURE OF THE CASE

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless

websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS," and Nonvisual Desktop Access, otherwise known as "NVDA," (jointly hereinafter as "screen readers") are currently the most popular, separately purchased and downloaded screen-reading software programs available for blind computer users. Plaintiff is an experienced user of both.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a

blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers.

## FACTUAL ALLEGATIONS

25. Defendant controls and operates groovycoffee.com. in New York State and throughout the United States.

26. GroovyCoffee.com is a commercial website that offers products and services for online sale. The online store allows Plaintiff to view the wide range of Colombian whole and ground coffee beans and related products offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by groovycoffee.com are the following:

(a) Consumers may use the website to connect with the Groovy Coffee on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase Colombian whole and ground coffee beans and related products for delivery to their doorstep; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, and learning about promotions.

28. This case arises out of Groovy Coffee's policy and practice of denying the blind access to the goods and services offered by groovycoffee.com. Due to Groovy Coffee's failure and refusal to remove access barriers to groovycoffee.com, blind individuals have been and are being denied equal access to Groovy Coffee, as well as to the numerous goods, services and benefits offered to the public through groovycoffee.com.

29. Groovy Coffee denies the blind access to goods, services and information made available through groovycoffee.com by preventing them from freely navigating groovycoffee.com.

30. Groovycoffee.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on groovycoffee.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind groovycoffee.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. Groovycoffee.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as groovycoffee.com, these forms include fields to locate products, fields to select bean style, roast, quantity, and size, fields to select frequency of delivery, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

33. Specifically, when Plaintiff attempted to make a purchase using her screen readers, she encountered the following problems:

**PROMOTIONAL POP-UP WINDOW:**

When Plaintiff landed on the website, a promotional pop-up appeared. When the promotional pop-up appeared, the purpose of the pop-up was **NOT** announced. Plaintiff heard "POPUP Form dialog" repeatedly **WITHOUT** any context about the “Get 10% off your first order” offer or the purpose of the form. The first field encountered is announced as "What's your name? edit What's your name? blank", **WITHOUT** any indication of what the form is for or why Plaintiff is being asked to provide their name. Plaintiff was **UNAWARE** of the purpose of the pop-up or the form. Consequently, Plaintiff was unable to take advantage of ‘sighted-only’ promotions.

Dismissing the promotional pop-up causes the page to become inaccessible. When the "No Thanks" button within the promotional pop-up is activated to dismiss it, the page refreshes and navigates to a blank "about:blank" page. Plaintiff was **UNABLE** to dismiss the pop-up and continue browsing the website.

**NAVIGATION:**

Submenus are **NOT** accessible with the keyboard; mouse hover is required. The "About" navigation link expands on mouse hover to show a submenu with additional links. The submenu **CANNOT** be opened with keyboard controls and the link does **NOT** announce as "collapsed" or "expanded." Plaintiff was **UNAWARE** a submenu existed and was **UNABLE** to access the submenu content without a mouse. This is a critical error.

The "Search" feature is **NOT** accessible for screen readers. When Plaintiff typed into the search field, results populate and were announced with a count, such as "7 RESULTS: 6 PRODUCTS expanded." However, the individual results are **NOT** announced as interactive controls. Suggestions and products are announced as plain text items, such as "COFFEE - MFR 1 of 1", "Whole Bean 1 of 6", and "Ground 2 of 6", **WITHOUT** any indication that these are links, buttons, or selectable options. Plaintiff was **UNABLE** to determine that the search results were interactive and was **UNABLE** to use the search feature as intended.

The "Cart" link/button is **NOT** accessible. The cart link/button does **NOT** receive keyboard focus and **CANNOT** be interacted with using keyboard controls. Plaintiff was **UNABLE** to access the cart and was **PREVENTED** from proceeding to checkout. This is a critical error.

Products are **NOT** accessible on collection pages (product links do not receive focus). "Add" buttons on product tiles are **NOT** labeled meaningfully. Each button is announced as "ADD — list TRANSLATION MISSING: EN.PRODUCTS.PRODUCT. PRICE.REGULAR_PRICE $20 button collapsed" instead of a meaningful price label and providing **NO** reference to the associated product. Multiple instances of these buttons appear in succession on collection pages. When a button is activated, there is

**NO** announcement that the product was added to the cart. The cart pop-up is announced, but Plaintiff was **UNABLE** to determine the purpose of the buttons or which product was associated with each button. This is a critical error.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

FAQs are **NOT** accessible on product pages. FAQ buttons function as tabs and require arrow keys to navigate rather than the Tab key, which conflicts with screen reader controls. When the down arrow key is pressed, the FAQ question is announced and the tab is activated, but the expanded content is **NEVER** announced and **CANNOT** be reached with screen reader navigation controls. Plaintiff was **UNAWARE** that additional content had become available and was **UNABLE** to access the answers to any of the FAQ questions. This is a critical error.

Size options are **NOT** labeled. Quantity options are announced as individual buttons — "1 CAN button", "2 CANS button", "4 CANS button", "12 CANS button" — **WITHOUT** any group label to indicate these are quantity selections. The visual "SELECT QUANTITY" label is **NOT** announced to screen readers. Plaintiff was **UNAWARE** these were quantity variant options and was **UNABLE** to determine the purpose of the controls or that they were part of a "Select Quantity" grouping.

Product variant options are **NOT** labeled. Product variant options are announced as "Ground visited link," **WITHOUT** any group label to indicate the following links are bean style selections. The visual "SELECT BEAN STYLE" label is **NOT** announced. Plaintiff was **UNAWARE** these were product variant options and was **UNABLE** to determine the purpose of the controls or that they were part of a "Select Bean Style" grouping.

Subscription options are **NOT** labeled. Purchase type options are announced as radio buttons **WITHOUT** a group label to indicate these are purchase type selections. Screen readers announce promotional and pricing text ahead of the option name, such as "SAVE 20% SUBSCRIBE & SAVE $18.40 DELIVERY EVERY 14 DAYS 21 DAYS 30 DAYS radio button checked 1 of 2", **WITHOUT** any context that these are part of a "Select Purchase Type" grouping. The visual "SELECT PURCHASE TYPE" label is **NOT** announced to screen readers. Plaintiff was **UNAWARE** these were purchase type options and was **UNABLE** to determine the purpose of the radio button grouping.

Delivery frequency options are **NOT** accessible. Delivery frequency controls within the "Subscribe & Save" option are **NOT** reachable with keyboard controls. The "14 DAYS", "21 DAYS", and "30 DAYS" options are **SKIPPED** over when navigating via keyboard. Plaintiff was **UNAWARE** delivery frequency options were available and was **PREVENTED** from interacting with or adjusting the delivery frequency without assistance.

**ADDING TO CART/NAVIGATING THE CART:**

Quantity controls are **NOT** labeled in the cart pop-up. Quantity controls in the cart pop-up are **NOT** labeled as quantity controls. The buttons are announced as "minus button" and "plus button" **WITHOUT** any reference to quantity. The current quantity value is **NEVER** announced to screen readers. Plaintiff was **UNABLE** to determine the purpose of the controls or confirm the current quantity of any item in the cart.

There is **NO** verbal notification given when cart quantity is adjusted with the "plus" or "minus" buttons. When the quantity "plus" or "minus" buttons are activated, **NO** announcement is provided to confirm the updated quantity value. The updated cart subtotal is also **NOT** announced. Plaintiff was **UNABLE** to determine if the quantity adjustment was successful or if the cart total had changed.

Product names are **NOT** announced as Plaintiff navigated through cart controls. All quantity and remove controls are announced identically as "remove button", "minus button", and "plus button" **WITHOUT** any reference to the associated product. When multiple products are in the cart, Plaintiff was **UNABLE** to determine which control corresponded to which product.

**CHECKOUT PROCESS:**
The “Discount code” input field does **NOT** receive focus until after the “Pay Now” button and additional links (Terms of Service, Privacy Policy, etc.) which usually signify the end of a page. It is **UNLIKELY** that a screen reader user would complete the required checkout fields and then continue navigating past the “Pay Now” button and multiple footer links to find this additional field.

Express Checkout buttons on the checkout page are **SKIPPED** over when the page loads. Plaintiff’s focus moves into the email input field **WITHOUT** informing Plaintiff of the alternative checkout options. Plaintiff was **UNAWARE** that these checkout options existed.

**STORE LOCATION:**
The store locator is **NOT** accessible for screen readers. This is a critical error making the accessibility of the Website even more significant. When Plaintiff typed into the store locator search field, location suggestions populate below but were **NOT** announced. **NO** instruction was provided on how to interact with the suggestions or that updated content has appeared. Plaintiff was **UNAWARE** that search suggestions were available or how to interact with the content. Additionally, the "50 MI" radius control is **NOT** announced as expandable or as opening a dropdown. When activated, a dropdown with radius options appears but does **NOT** receive keyboard focus and is **NOT** announced. Plaintiff was **UNAWARE** radius options were available and was **UNABLE** to determine the purpose of the "50 MI" control. When continuing to navigate through the store locator results, "Visit Website" links are announced repeatedly in succession **WITHOUT** any reference to the associated store name or location. Plaintiff was **UNABLE** to determine which store each link corresponded to.

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

34. Furthermore, groovycoffee.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different “hot spots” which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must

contain alt-text for the various "hot spots." The image maps on groovycoffee.com's menu pages do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase.

35. Groovycoffee.com also lacks accessible forms. Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the shopping cart. As a result, blind customers are denied access to the shopping cart and to the ability to check out. Consequently, blind customers are unsuccessful in adding products into their shopping carts and are essentially prevented from purchasing items on groovycoffee.com.

36. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through groovycoffee.com even more time consuming and confusing for Plaintiff and blind consumers.

37. groovycoffee.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, groovycoffee.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on groovycoffee.com.

38. Due to groovycoffee.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if groovycoffee.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals

can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, groovycoffee.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on groovycoffee.com.

39. groovycoffee.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use groovycoffee.com and who would otherwise be able to fully and equally enjoy the benefits and services of groovycoffee.com in New York State and throughout the United States.

40. Plaintiff, Paradise Morgan, has made numerous attempts to complete a purchase on GroovyCoffee.com, most recently on September 18, 2026; September 27, 2026; and October 11, 2026, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused GroovyCoffee.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the 'Tumbler' and the 'Ground Original Roast' on Defendant's website. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about new and additional cinnamon-infused Colombian coffee in reusable tins and related merchandise for delivery to her doorstep. Plaintiff, like many other people, drinks coffee every morning. For her, it can be especially challenging to get out of the house at the start of every day, find her way to a coffee shop, get to a counter, and retrieve a coffee order among the other people waiting, so she strongly prefers to make her coffee at home. However, for Plaintiff,

as a blind person, buying coffee in physical stores is not much easier. Arranging a commute to a store, traversing around other customers and staff, picking out the right products among the countless items in a store, and going through the checkout process make shopping in-person almost impossible. Because of this, Plaintiff prefers to shop online, where she can have coffee delivered and ready to make at home. Like most blind people, Plaintiff relies on social media for product recommendations. While parsing through her feeds, Plaintiff came across Defendant's brand. Plaintiff was enamored with the fact that Defendant's coffee contains unique flavor notes that customers regularly praise as being excellent. Those flavor notes include notes of cinnamon, semi-sweet chocolate, and toasted almonds, which Plaintiff finds particularly appealing. Plaintiff was also impressed to discover Defendant's brand's commitment to sustainability and the environment, as they package their products in tins that are designed to be recycled or reused. Plaintiff's own values prioritize sustainability, and she would much rather purchase from a brand that shares her morals and perspectives than one that ignores them. As such, Plaintiff was eager to make a purchase on Defendant's website. Plaintiff sought to purchase directly from Defendant's website because it offers Defendant's complete product line and because it ensures product authenticity. Unfortunately, Defendant's website was not accessible and continues to be inaccessible, thereby deterring Plaintiff from making purchases on the site. If the website were accessible to the blind and Plaintiff were not deterred from returning, she would be able to complete the purchases she originally intended to make and return regularly to the website to replenish her supply of coffee beans and grounds, which she plans to make coffee with every day. Moreover, Plaintiff would like to return to explore the other products currently on Defendant's site and to purchase Defendant's new coffee flavors and merchandise as they are released. Plaintiff has many loved ones that would love Defendant's merchandise, and she wants to to purchase those items as gifts for them. Plaintiff is especially interested in returning to

Defendant's website to purchase the 'Cropped Tank Top.' Plaintiff has purchased coffee from other (accessible) online vendors in the past, but Defendant's coffee is a unique blend that other customers love, which gives Defendant's brand trustworthiness and credibility and which distinguishes Defendant's brand from competitors. Plaintiff intends to return to Defendant's website once it becomes accessible so that she can make future purchases and fully experience the variety of products Defendant offers. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether a website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during September and October 2026 without success and will definitely make purchases of additional products, including the new products that are regularly added to the website, amongst many other products which are sold on the website and which currently cannot be purchased by blind persons.

41. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, groovycoffee.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of groovycoffee.com.

43. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of groovycoffee.com, Plaintiff has suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

56. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 55 of this Complaint as though set forth at length herein.

57. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

58. groovycoffee.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

59. Defendant is subject to Title III of the ADA because it owns and operates groovycoffee.com.

60. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

61. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

62. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

63. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated

or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

64. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

65. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Groovy Coffee who are blind have been denied full and equal access to groovycoffee.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

66. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of groovycoffee.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

68. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

69. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

70. Plaintiff is also entitled to reasonable attorneys' fees and costs.

71. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

(Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law § 292 *et seq*.))

72. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 of this Complaint as though set forth at length herein.

73. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

74. groovycoffee.com is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

75. Defendant is subject to the New York Human Rights Law because it owns and operates groovycoffee.com. Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

76. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to groovycoffee.com, causing groovycoffee.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

77. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, “a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations.”

78. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, “a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden.”

79. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant’s business nor result in an undue burden to Defendant.

80. Defendant’s actions constitute willful intentional discrimination against Plaintiff on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

81. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

82. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of groovycoffee.com under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

83. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

84. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

85. Plaintiff is also entitled to reasonable attorneys' fees and costs.

86. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## **THIRD CAUSE OF ACTION**

(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.))

87. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 86 of this Complaint as though set forth at length herein.

88. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

89. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

90. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

91. groovycoffee.com is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

92. Defendant is subject to New York Civil Rights Law because it owns and operates groovycoffee.com. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

93. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to groovycoffee.com, causing groovycoffee.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

94. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

95. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

96. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the Defendant shall reside . . ."

97. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

98. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

99. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

**FOURTH CAUSE OF ACTION**
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

100. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 99 of this Complaint as though set forth at length herein.

101. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

102. Groovycoffee.com is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

103. Defendant is subject to City Law because it owns and operates groovycoffee.com. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

104. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to groovycoffee.com, causing groovycoffee.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

105. Defendant's actions also violate N.Y.C. Admin. Code § 8-107(17), which states that "unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates

that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

106. By failing to operate a website that is readily accessible and usable to individuals because of their disability, when viewed in its entirety, Defendant has demonstrated a policy, practice, or procedure that has refused, withheld from, or denied Plaintiff, who qualifies as a member of a protected group under the provisions of the NYCHRL, any of the accommodations, advantages, facilities, or privileges of the Website.

107. The violations are particularly serious given the NYCHRL's "uniquely remedial" purpose, which provides that each section must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights law, including those laws with the provisions comparably-worded to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130.

108. Accordingly, Defendant's conduct is subject to a much stricter standard than under state or federal law, and its ability under these provisions must be determined separately and independently from its liability under the disability provisions of either state or federal law.

109. As a direct and proximate result of Defendant's violation of the NYCHRL, Plaintiff has been injured as set forth herein.

110. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of groovycoffee.com under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing

regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

111. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

112. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

113. Plaintiff is also entitled to reasonable attorneys' fees and costs.

114. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Declaratory Relief)

115. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 114 of this Complaint as though set forth at length herein.

116. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that groovycoffee.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of groovycoffee.com, which Groovy Coffee owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

117. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff against the Defendant as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, groovycoffee.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that groovycoffee.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, groovycoffee.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d) An order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under New York State Human Rights Law and City Law;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
October 21, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*__________
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com